## Medlock v. Commonwealth.

(Decided June 25, 1926.)

## Appeal from Jackson Circuit Court.

1.  Indictment and Information—Where Indictment for Receiving
    Deposits Knowing Insolvency of Bank Specifically Stated all Acts
    Constituting Crime had Been Committed Before Finding of In-
    dictment, Mistake in Specifying Date Held Not Ground for De-
    murer (Criminal Code of Practice, Section 129).—In prosecution
    of bank officer for receiving money into bank knowing it to be
    insolvent, where indictment expressly charged that all acts con-
    stituting crime had been committed before finding thereof,
    patent mistake in indictment as to date crime was committed
    held not ground for demurrer, in view of Criminal Code of Prac-
    tice, section 129.
2.  Criminal Law—Refusal of Continuance on Affidavit which Failed
    to Deny Facts Charged as Constituting Guilt Held Not Error.—
    In prosecution for receiving deposits into bank after knowledge
    of insolvency, refusal of continuance on affidavit which failed to
    deny that he received deposits when bank was insolvent when he
    knew it to be so, but merely stated conclusion that he was not
    guilty, held not error, especially in view of fact that accused
    had kept books of bank for four years and must have known its
    insolvency.
3.  Criminal Law—In Prosecution for Receiving Deposits Knowing
    Bank to be Insolvent, Books of Bank held Not Best Evidence of
    Insolvency, but Testimony of Accountants and Representatives
    of Banking Department as to Insolvency was Admissible.—In
    prosecution for receiving deposits knowing bank to be insolvent,
    books of bank held not the best evidence to prove its insolvency,
    and therefore testimony of representatives of state banking de-
    partment and accountants as to insolvency was not inadmissible
    because secondary evidenece, especially where he objected to
    books offered by Commonwealth.
4.  Banks and Banking—Evidence Showing Accused to Have Had
    Full Control of Books of Bank for Over Four Years, and Showing
    Large Excess of Liabilities Over Assets, would be Sufficient for
    Jury on Knowledge of Insolvency.—Evidence showing accused
    had full control over and kept books and record of bank capital-
    ized at $15,000.00 for more than four years, and that its liabilities
    were over $73,000.00 in excess of assets, would be sufficient for
    jury as to whether accused knew of insolvency when he admit-
    tedly received deposits.
5.  Banks and Banking.—In prosecution of bank cashier for receiv-
    ing deposits in bank knowing it to be insolvent, evidence held
    to sustain conviction.

LEWIS, BEGLEY & LEWIS for appellant.

F. E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assist-
ant Attorney General, for appellee.

Opinion of the Court by Commissioner Sandidge— Affirming.

Appellant, E. I.. Medlock, former cashier of the Bond State Bank, of Bond, Kentucky, was convicted in the Jackson circuit court of receiving deposits into the bank after having knowledge that it was insolvent, and sentenced to three years' confinement in the state penitentiary. He prosecutes the appeal from that judgment and assigns the various reasons for its reversal hereinafter discussed.

It is contended for him that the trial court erred in overruling the demurrer to the indictment, that contention being predicated entirely upon the fact that it is alleged in the indictment that the deposits were received by him on the "first day of April, 1925," when the endorsement on the indictment shows that it was returned into court on the 31st day of March, 1925. We find, however, that the indictment also expressly charges all of the acts constituting the crime to have been committed "before the finding of the indictment herein." In view of the provisions of section 129 of the Criminal Code that the statement in the indictment as to the time at which the offense was committed is not material further than as a statement that it was committed before the time of the finding of the indictment, unless it be a material ingredient of the offense, the patent mistake in this indictment as to the date when the crime, a felony, was committed is wholly immaterial in view of the further allegation that it was committed before the indictment was found. The cases so holding are numerous. See Jones v. Commonwealth, 1 Bush 34; Commonwealth v. Miller, 79 Ky. 451, 3 Rep. 231; Faustre v. Commonwealth, 92 Ky. 34, 13 Rep. 347, 17 S. W. 189; and Paul v. Commonwealth, 159 Ky. 848, 169 S. W. 544. Hence, the trial court properly overruled the demurrer to the indictment.

It is earnestly insisted for appellant that the trial court erred in overruling his motion for a continuance and in forcing him into the trial hereof at the term when the conviction was had. It appears that appellant was the cashier of the Bond State Bank from August, 1920, until December, 1924, a period of something over four years. He was indicted early in January, 1925. Failing to make bond he was committed to jail on the process which issued on the indictments and remained in jail

until some time in March. The trial was had at the March term of court and on the first and second days of April. The motion for a continuance was predicated upon a showing made by appellant's affidavit and that of his counsel that from the time he was indicted and arrested until shortly before the March term of court he was unable to make bond and consequently was confined in jail; that he was unable to conclude the arrangements for employment of counsel until the day his case was set for trial; and that due to these facts neither he nor his counsel had had opportunity to examine the books and records of the bank and to prepare and be able to present to the jury his defense herein. A number of indictments appear to have been returned against appellant and the affidavits supporting his motion for a continuance were prepared to support the motion for a continuance in all of the cases. A careful reading of appellant's affidavit, as it relates to the particular prosecution under the indictment herein, discloses that he does not deny having received the particular deposits charged in the indictment, nor does the affidavit for him make any showing that at the time he received them the bank was solvent, or if insolvent that he did not then know that fact. The only statement of the affidavit is: "That he is not guilty of the charge contained in either of the indictments mentioned above, and verily believes that if given until the next term of this court in which to prepare his defense to said charges that he will be able to so show." Under the statute denouncing the crime for which appellant has been convicted but three elements of fact are involved: First, whether or not he as cashier of the bank received or assented to the receiving of the deposits in question; second, if so, whether or not the bank then was insolvent; and third, if so, whether or not he had knowledge of that fact. It appears that appellant has been cashier of the bank in question for something over four years and had had entire charge and supervision of all of its books and records, and in fact had personally done the greater part of the work involved in keeping its books and records. In that state of case we are unable to perceive how appellant, who had kept the books and made the records of the bank, needed any great amount of time for their inspection to be able to present his defense from them if by them he was able to show a defense herein. The affidavit does not make a showing for appellant that he did not receive the deposits in question and that the bank then

was solvent, or that if insolvent he had no knowledge of that fact; but when reduced to a final analysis merely contained the statement by way of a conclusion that appellant was not guilty and that if the court would grant him a continuance so that he might examine the books of the bank that he believed he would be able to show that fact. In addition to that, appellant had from early in January until the 31st day of March in which to prepare for his defense. He had the same means of employing counsel in January that he had in March when he did employ them. If he was unable to employ counsel when indicted and arrested during the January term of the court, upon a showing of that fact, the court would have appointed counsel to defend him. If, by the simple expedient of failing to employ counsel or of failing to move the court to appoint counsel upon the ground that he is unable to employ such, one charged with crime, as appellant insists should be done in his case, could procure continuances of the prosecutions against him, delay in the administration of criminal justice would intolerable. As relates to the trial of the charge under the indictment herein, we are of the opinion that appellant wholly failed to make a showing which would have authorized the trial court to continue this case, and conclude that there was no error upon the part of the trial court in overruling appellant's motion for a continuance.

Appellant vigorously insists that the trial court erred in admitting incompetent evidence against him upon the trial hereof. The argument upon that ground is based altogether upon the failure of the Commonwealth to introduce in evidence the books and records of the bank. The argument is that they were the best evidence of the facts sought to be proved against appellant herein, and that all of the testimony of the representatives of the State Banking Department and of the accountant as to the insolvency of the bank at the time the deposits in question were received was secondary evidence and was admitted over appellant's objection. Counsel for appellant seems to have overlooked the essential fact that the solvency or insolvency of a bank can best be established not by the books and records that may have been kept by a defaulting bank official, but rather by a verification of the assets and liabilities of the institution. If the Commonwealth were required to establish the insolvency of a bank upon the trial of one of its officials charged with having received deposits when the bank was insolvent by

the books kept by that official it doubtless would never be able to procure a conviction, for by the simple expedient of falsifying his books so as to show the bank to be solvent when a verification of its assets and liabilities would disclose it to be insolvent, a defaulting bank official could always go acquit. To illustrate the fallacy of that contention it appears that only a few days before the insolvency of the Bond State Bank was discovered by its directors and stockholders, appellant, who had sole charge and control of it and its books and records, had rendered to the directors a statement showing its financial condition at that time as shown by his books from which the bank appeared not only to be solvent but to be possessed of sufficient surplus funds to justify a declaration of a 10% dividend to the stockholders and the dividend was declared. As a matter of fact a verification of the assets and liabilities of the bank at that time would have disclosed that it was hopelessly insolvent. It appears from the evidence herein that representatives of the State Banking Department and a certified public accountant and its directors made a verification of the assets and liabilities of the bank, and that on December 10, 1924, the date on which appellant is charged with having received the deposits, knowing the bank to be insolvent, the assets of the bank were approximately $75,000.00 less than its liabilities. The Commonwealth offered to introduce as evidence herein the report of the accountant showing in detail the actual condition of the bank, listing separately each item of its assets and each item of its liabilities. Appellant objected to its introduction and the trial court sustained the objection. The evidence herein discloses that while testifying appellant was handed and identified a number of the books of the bank, records which he admitted that he himself had made, and upon the Commonwealth offering to introduce those bank records which he had made and concerning which he had been examined appellant objected and the trial court sustained the objection. Consequently it appears that appellant's insistence now that the court erred in not requiring the bank books and records to be introduced to prove the case for the Commonwealth is decidedly at variance with his consistent and successful efforts by objection to keep out of the record such of them as the Commonwealth offered in evidence upon the trial of the case. That the bank books were in the court room appears from the record, because it appears that

a number of them were exhibited to and identified as such by appellant while testifying, and much of his cross-examination was devoted to entries and transactions appearing upon its books which he had made and kept. No motion for him that any of the books or records be produced and no offer to introduce any of them was made for him.

The bank in question was capitalized at $15,000.00. The testimony for the Commonwealth established that a verification of its assets and liabilities disclosed an excess of the latter over the former of $73,581.26, clearly showing the hopelessly insolvent condition of the bank. Appellant appears to have had full control of the affairs of the bank and of its books and records for more than four years. Those facts alone, it would seem, are sufficient to make it a question for the jury whether at the time of receiving the deposits, which appellant admits he received, he knew the bank to be insolvent. Parrish v. Commonwealth, 136 Ky. 77, 123 S. W. 339. However, much more evidence of that fact appears herein. He appears to have falsified his books to show that the National Bank of Kentucky owed to the Bond State Bank $18,354.56 when it owed only the sum of $8,188.43. He had abstracted from the individual ledger the leaves containing the accounts of some forty of its customers and had them hidden in his trunk at home, those accounts showing an aggregate overdraft by those customers of $37,000.00, and he stated, according to the testimony of three or four witnesses for the Commonwealth, that he did that to keep the directors from discovering the bank's condition. He admitted having credited various customers' accounts that were overdrawn with sums aggregating over $5,000.00 when no money had been deposited by them. His disingenuous explanation was that that was his method of charging off bad accounts. Those credits never appeared on any except the individual account of the favored customer, and the loss thereby entailed never found its way into the profit and loss account of the bank. These are some of the more prominent facts appearing in the record to establish appellant's actual knowledge of the insolvency of the bank at the time he received the deposits in question. For himself appellant made no showing that the bank was solvent, and all of his testimony tending to establish that if so when he received the deposits he did not know it was contained in the following quotation from

his testimony: "Q. At the time this deposit was received by you in the bank, tell the jury whether or not you knew the bank was insolvent? A. No, sir, I didn't. Q. Tell the jury whether or not you believe it was solvent? A. I believed it was."

It is sufficient to say, in response to appellant's argument that the minute book of the proceedings of the board of directors of the bank introduced to establish that appellant was elected its cashier did not show that fact, that he himself testified that he was its cashier from August, 1920, until December, 1924, and that during all of that time as such he had full charge and control of the bank, its affairs, books and records.

Our reading of the record discloses that the trial court in its rulings on evidence not only did not permit the introduction of incompetent evidence against appellant, but on his objection kept much that was competent which the Commonwealth offered from the jury. The instructions given are not questioned, and appear to have correctly submitted the issues of the case to the jury. No error to the substantial prejudice of appellant's rights appears, and the judgment can only be affirmed.

Judgment affirmed.